145 So.2d 849

**C. E. MAYES**

**v.**

**STATE.**

**6 Div. 879.**

Court of Appeals of Alabama.

Oct. 16, 1962.

Nash & NeSmith, Oneonta, for appellant.

MacDonald Gallion, Atty. Gen., Bernard F. Sykes, Asst. Atty. Gen., and Roy E. Hicks, Montgomery, Legal Research Aide, for the State.

PRICE, Presiding Judge.

The indictment was in two counts. Count 1 charged grand larceny. Count 2 charged the buying, receiving, etc., of stolen property. Conviction was had under second count of the indictment. The value of the property was set at $25.00 or more.

The evidence for the state tended to show that fourteen rolls of U. S. Steel, Lyman brand, barbed wire were stolen from the pasture of Mr. Randall Murphree in Blount County. Mr. Murphree testified he had hauled the wire in his cattle truck and that cow fertilizer, chicken litter and sawdust had become deeply embedded in the rolls; that some two and a half months after it was stolen he saw seven rolls of his wire in the defendant's back yard; that he recognized and identified the wire by its brand name and by the embedded litter from his truck; that defendant, after proper predicate as to voluntariness, stated to officers: "I figured you boys would come looking for it so I laid it out where you could see it." The value of the wire was $10.00 per roll.

Two law enforcement officers testified the defendant told them he bought the wire from a man, who also had some apples on his truck.

The defendant, on his direct testimony stated: "This wire you all are talking about was at my place but it wasn't loaded over with stuff like they said it was." On cross-examination he testified he bought the wire

from a man he had never seen before. The man was driving a green truck and told defendant he had bought the wire. This type of wire was selling for $12.00 per roll at the store, and defendant paid the man $10.-00 a roll for it.

The record shows that defendant was arrested, charged with larceny of the wire, December 18, 1961. On December 19, 1961, he posted with the Sheriff of Blount County an appearance bond in the amount of $750.-00, conditioned upon his appearance in the Circuit Court to "answer an indictment which may be found against him in said court for the offense of Grand Larceny." On January 6, 1962, the present indictment was returned against him and bail was fixed at $750.00. He was not rearrested but was allowed to remain free under his previous bond. The case was called for trial at the February term of the Circuit Court of Blount County, on the 26th day of February, 1962. Defendant failed to appear and a conditional forfeiture of bond was declared and an alias writ of arrest was issued and executed by the sheriff.

The judgment entry shows the case was again called for trial on February 27, 1962. The defendant having no attorney to represent him, the court appointed counsel to assist him in selecting a jury. The judgment entry reads: "And the defendant in open court this day being arraigned on the indictment in this case charging him with the offense of Grand Larceny and Receiving or Concealing Stolen property and pleads not guilty."

The defendant was without benefit of counsel on his trial. No objections were interposed to any of the proceedings and no ruling of the court was invoked during the trial.

After his conviction defendant employed attorneys who filed a motion for a new trial, which was duly overruled.

Counsel insists defendant was deprived of the rights guaranteed to him under the due process clauses of the Alabama Constitution and of the federal Constitution for the reasons that the defendant was forced to trial without having been notified of the returning of the indictment, without being rearrested, or notified of the date the case was set for trial, and without an opportunity to employ counsel or time to prepare his case.

■ Defendant was at liberty on bail, and not being charged with a capital offense, it was not required that he be rearrested under the indictment or notified of the date of trial. Title 15, Section 169, Code of Alabama, 1940. It was his duty to appear at the next ensuing session of the court. Title 15, Section 207, Code, supra. Defendant went to trial without objection and no request was made for a continuance of the case so that he might employ counsel. Moreover, if it be assumed that the matters complained of could be raised for the first time on a motion for a new trial, no proof was offered in support of any ground of the motion.

■ It is next insisted that because of certain comments of the trial judge in the presence of the jury the defendant was compelled to take the witness stand and to give evidence against himself in violation of his constitutional right against self-incrimination. Section 6, Article 1 of the Constitution.

Insistence is also made that the court refused to allow him reasonable latitude in conducting his own defense. In brief it is argued: "The record clearly shows that every time the appellant opened his mouth during the trial of the case he was either admonished by the court or interrupted by the State's Solicitor until he finally gave up trying to say anything in his own defense." The occurrences complained of appear in the record as follows: During the direct examination of Mr. Murphree, after proper predicate was laid as to its voluntariness, the witness was asked to tell what defendant said when the witness saw the wire at defendant's home. The witness answered: "He said, 'I figured you boys would come looking for it so I laid it out where you

could see it.'" Thereupon, the defendant said: "That is a lie." The court stated: "Mr. Mays, don't make any comment, you will have the chance to testify."

When the state had concluded its examination of Mr. Murphree, the court asked:

"All right, Mr. Mays, do you want to ask him any questions?"

The following then occurred:

"By the defendant, Mr. Mays:

"Q. I want to ask him where I was when I said that?"

"The witness: I didn't hear him.

"The court: What did you say?

"Mr. Hodges: (solicitor) He wanted to know where he was when he said that.

"A. He was in his back yard beside this wire.

"Mr. Mays: He never was in my back yard.

"The court: Mr. Mays, you can ask him any questions pertaining to the case, go ahead, do you want to—

"The defendant, Mr. Mays: No, I don't want to ask him anything, I am too bad a lawyer.

"Mr. Bains (County Solicitor) Judge, the State has no objections, if you want to ask him any questions on behalf of Mr. Mays or if he wants to ask any questions, anyway he wants to ask them.

"The Court: Well, I don't know of any questions I want to ask.

"Mr. Bains: We don't have any objections to the form that he uses, Judge.

"The Court: Yes, I understand that. Do you want to ask him any more questions?

"The defendant, Mr. Mays: No, sir."

When the state had rested its case in chief the trial court explained to the defendant that he had the right to testify in his own behalf, saying, "you do not have to if you do not want to but you can do that at this time if you wish." The defendant said: "I want to." Thereupon the defendant took the witness stand, and the following occurred:

"By Mr. Mays: 'This wire you are talking about was at my place but it wasn't loaded over with stuff like they said it was."

"Mr. Bains: Judge I can't hear him.

"The Court: You will have to speak out so everyone can hear you.

"The defendant, Mr. Mays: Well, I won't just try to say anything else.

"Mr. Hodges: Judge, may I ask him some questions?

"The Court: Yes that would be all right because he took the stand."

Thereafter the defendant was cross-examined by the solicitor.

We have carefully considered the record and it is our conclusion that the defendant was not deprived of any of his constitutional rights. There was nothing in the explanatory remarks of the court as to defendant's privilege not to testify that would tend to impair his right to a fair trial. We find no merit in the insistence that he was not given adequate opportunity to present his defense.

The evidence was ample to sustain the conviction. The defendant was not entitled to a new trial on the ground the verdict was contrary to the weight of the evidence.

We find no error in the record and the judgment of the circuit court is affirmed.

Affirmed.